370 So.2d 633 (1979)
BLUE STREAK ENTERPRISES, INC.
v.
GULF COAST MARINE, INC., et al.
No. 9951.
Court of Appeal of Louisiana, Fourth Circuit.
April 10, 1979.
*634 Dodge, Friend, Wilson & Spedale, Denis Paul Juge, Gordon F. Wilson, Jr., New Orleans, for defendant-appellant.
Camp, Carmouche, Palmer, Barsh & Hunter, Frederick S. Haygood, Metairie, for third party defendant-appellee.
Before SAMUEL, BEER and GARRISON, JJ.
BEER, Judge.
Blue Streak Enterprises, Inc. (hereafter, "Blue Streak") secured insurance covering its Gulf Outlet Marina from its insurance agent, Theriot, Duet & Theriot, Inc., which brokered the insurance through Gulf Coast Marine, Inc. The policy afforded coverage for the period of July 24, 1975 to July 24, 1976.
On September 4, 1975, Blue Streak and Robert Berthelot allegedly executed a written contract under the terms of which Blue Streak would sell the marina to Berthelot in January of 1976. However, the act of sale was apparently not passed until December 2, 1976. Sometime after the execution of the agreement to sell, but prior to both the expiration of the insurance policy and the actual act of sale, Berthelot allegedly represented himself as the new owner of the marina to Dauterive & Trist Insurance Agency, Inc. and instructed them to secure a new policy of insurance covering the marina. He made the same representation of ownership to Gulf Coast, informing them that the policy then in effect was not to be renewed. On July 31, 1976, Blue Streak's Marina was damaged by a tornado, but the Gulf Coast policy (which might have covered the damage) had lapsed on July 24, 1976. Consequently, on February 24, 1977, Blue Streak filed suit against Gulf Coast Marine, alleging breach of contract and, alternatively, negligence and also sued Dauterive & Trist for negligently advising Gulf Coast not to renew. Thereafter, the following incidental demands were filed:
a. April 22, 1977Gulf Coast third-partied Dauterive & Trist.
b. May 10, 1977Dauterive & Trist reconvened against Gulf Coast Marine and third-partied Berthelot and Gulf Outlet Marina, Inc.
c. August 10, 1977Gulf Coast third-partied Theriot.
Theriot filed an exception of prescription (based on LSA-C.C.P. art. 1067) which the trial court maintained and, thus, dismissed Gulf Coast's third-party demand. Gulf Coast has devolutively appealed, alleging error in the trial court's apparent application of LSA-C.C.P. art. 1067 to an incidental demand for indemnification or contribution. Accordingly, the only issue before us is whether the third-party demand for indemnification *635 or contribution has prescribed.
C.C.P. art. 1067 provides:
"An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of date of service of main demand or in the case of a third party defendant within ninety days from service of process of the third party demand."
In the instant case, the appellee argues that Gulf Coast's third-party demand against Theriot was filed more than one year after the alleged tort[1] and more than 90 days from the date of the main demand, and that it has, therefore, prescribed.
Third-party plaintiff-appellant, Gulf Coast, contends that their incidental demand could not have prescribed because their cause of action for indemnification or contribution does not accrue until Gulf Coast has paid Blue Streak. Alternatively, appellant argues that Blue Streak's suit against one solidary obligor, Gulf Coast, interrupted prescription against its co-debtors in solidoTheriot. (LSA-R.S. 9:5801.)
Originally, C.C.P. art. 1067 was enacted to permit the institution, in certain circumstances, of reconventional demands on which prescription had run. (See Acts, State of Louisiana 1970, V. II, No. 472, p. 1152.) This article was amended in 1974 to encompass all incidental demands. The legislative intent was expressed as follows:
"To amend and reenact Article 1067 of the Louisiana Code of Civil Procedure relative to the filing of prescribed reconventional demands by providing time within which to file any incidental demands and third party demands after the filing of the main demand." Acts, State of Louisiana 1974, Vol. I, No. 86, p. 262.
In Thomas v. W & W Clarklift, Inc. and Reliance Insurance Company, 365 So.2d 913 (La.App. 4th Cir. 1978), decided by us in December, 1978, we held that C.C.P. art. 1067 is limited in application to incidental demands which have otherwise prescribed and therefore serves as a 90-day extension to file prescribed incidental demands, observing:
"If the claim has not otherwise prescribed in the first place the article has no application whatsoever . . . ."
But this is not a C.C.P. art. 1067 case. Prescription does not begin to run on claims for indemnification and/or contribution until the party seeking same is, itself, cast in judgment. See Edward Levy Metals, Inc. v. New Orleans Public Belt R., 243 La. 860, 148 So.2d 580 at 583 (1963). (Also note Sharp v. Massey-Ferguson, Inc., La.App., 153 So.2d 508, and LeBlanc v. Big Jim's, Inc., La.App., 252 So.2d 181.)
Accordingly, the judgment of the trial court is reversed, costs to await final outcome of the litigation.
REVERSED.
NOTES
[1] LSA-C.C. art. 3536 (1870).